# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| JEFF ROEDER and CHRISTOPHER GRILL,<br><br>           Plaintiffs,<br><br>vs.<br><br>DIRECTV, INC. and DIRECTV, L.L.C.,<br><br>           Defendants. | No. C14-4091-MWB<br><br><br>**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS** |

_____

## TABLE OF CONTENTS

**I. INTRODUCTION**............................................................................*2*
    **A. Factual Background** ..............................................................*2*
    **B. Procedural Background** .........................................................*4*

**II. LEGAL ANALYSIS** ......................................................................*5*
    **A. Standards For Motions To Dismiss**.........................................*5*
    **B. The FLSA Generally** ...........................................................*7*
    **C. Joint Employment Under the FLSA**........................................*7*
    **D. Review Of Factors** ............................................................ *11*
        **1. The power to hire and fire**.......................................... *11*
        **2. Supervision and control of work schedules and conditions of employment**.......................................... *11*
        **3. Determination of rate and method of payment** ..................... *12*
        **4. Maintenance of employment records** ................................ *13*
        **5. Totality of the circumstances**........................................ *15*
    **E. Minimum Wage and Overtime Claims**..................................... *15*

**III. CONCLUSION** ........................................................................ *17*

Among the principal characters in Charles Dickens's classic novel Bleak House is Mr. Tulkinghorn, the solicitor to an aristocratic family, who manipulates the cast of characters, as a puppetmaster, enabling him to direct the fates of others. In this lawsuit, concerning purported violations of the Fair Labor Standards Act ("FSLA"), 29 U.S.C. §§ 2001-219, plaintiffs allege that, like Mr. Tulkinghorn, defendant DIRECTV acts as the corporate puppetmaster of its business universe, pulling the strings of everyone in that universe, including their employer, a company that was part of DIRECTV's provider network. DIRECTV has filed a Motion to Dismiss (docket no. 13), which requires me to determine, *inter alia*, whether plaintiffs have alleged sufficient facts establishing that DIRECTV was also their employer under the FSLA.

## I.    *INTRODUCTION*

### A.    *Factual Background*

"When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Thus, the factual background to the pending motion to dismiss must be drawn from the factual allegations in plaintiffs Jeff Roeder and Christopher Grill's Complaint, unless other matters are also incorporated by reference, integral to their claims, subject to judicial notice, matters of public record, orders, or in the record of the case. *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (citing 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004)). In this case, Roeder and Grill did not attach any documents or exhibits to their Complaint. Thus, the factual background presented, here, is based on Roeder and Grill's allegations in their Complaint.

Plaintiff Jeff Roeder is an individual residing in Arthur, Iowa. Plaintiff Christopher Grill is an individual residing in Parkersburg, Iowa. Defendant DIRECTV, Inc. is a Delaware corporation with its principal place of business in El Segundo, California. DIRECTV, Inc. does business as DIRECTV Home Services. In December 2011, DIRECTV merged with another DIRECTV entity, DIRECTV Operations, L.L.C. The resulting entity is defendant DIRECTV, L.L.C., which is a Delaware corporation with its principal place of business in El Segundo, California.[1]

Roeder and Grill were technicians who installed and repaired DIRECTV satellite television service for DIRECTV. DIRECTV oversees and operates a "Provider Network" comprised of intermediary entities known as "Home Service Providers" ("HSPs") and secondary intermediaries called "Secondary Providers." Complaint at ¶ 14. DIRECTV has merged with many of the HSPs, leaving three primary HSPs in existence as independent entities still within the Provider Network; DirectSat, MasTec, and Multiband. Complaint at ¶ 16. DIRECTV's relationship with the Provider Network is controlled by a series of "Provider Agreements" that govern the framework for the business relationship between DIRECTV and the customers of its Provider Network. Complaint at ¶ 17. Included in the Provider Agreements are (1) required policies and procedures with which hired technicians must comply; (2) uniform and identification specifications, including requirements to show and wear DIRECTV insignia; and (3) equipment installment specifications. Complaint at ¶¶ 18–19. While employed as technicians, Roeder and Grill received daily schedules from a DIRECTV dispatching

---

[1]DIRECTV states in its motion to dismiss that, as of January 1, 2012, DIRECTV, Inc. merged into DIRECTV, L.L.C. and out of existence. This fact, however, has not been established as a matter of law. Accordingly, I assume that both defendants DIRECTV, Inc. and DIRECTV, L.L.C. continue to exist, but will refer to them collectively as DIRECTV.

system. Roeder and Grill would complete jobs "assigned by Defendants in the prescribed order on the daily work schedule." Complaint at ¶ 21. Roeder and Grill were required "to check-in by telephone with DIRECTV via its dispatching system." Complaint at 21. Once an assigned job was completed, they had to report it to DIRECTV, and coordinate "directly with DIRECTV employees to activate the customer's service. Complaint at ¶ 21.

Payroll was administered by non-DIRECTV providers, and those providers also directly paid Roeder and Grill. However, DIRECTV "determined whether Plaintiffs' work merited compensation, including setting the rate of pay to the Providers for Plaintiffs' work." Complaint at ¶ 34.

### B. Procedural Background

Roeder and Grill filed suit against DIRECTV under the FLSA, alleging that DIRECTV was their employer and violated the FLSA by failing to pay them the statutory minimum wage and required overtime compensation. DIRECTV has filed a motion to dismiss in which it asserts that Roeder and Grill's Complaint should be dismissed for failure to state a claim upon which relief may be granted under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Specifically, DIRECTV asserts that Roeder and Grill have failed to allege that DIRECTV was their employer for purposes of the FLSA. DIRECTV also contends that Roeder and Grill's minimum wage claim must be dismissed because they have failed to plead sufficient facts that would support their claim that they received wages below the minimum wage in any workweek. DIRECTV further asserts that Roeder and Grill's overtime claim fails because they have failed to identify any single workweek in which they worked over 40 hours and did not receive overtime. Roeder and Grill filed a timely response to DIRECTV's motion in which they argue that their Complaint is sufficient to state a claim

for relief. In addition, Roeder and Grill filed a Conditional Motion For Time Within Which To Seek Leave To Amend Should The Court Grant Defendants' Rule 12(b)(6) Motion to Dismiss (docket no. 20) in which they request that I grant them time to seek leave to file an amended complaint if I find their original Complaint fails to state a claim. DIRECTV filed a timely reply brief in support of its Motion to Dismiss as well as a response to Roeder and Grill's Motion for Time to Seek Leave to Amend.

## II.   LEGAL ANALYSIS

### A.   Standards For Motions To Dismiss

DIRECTV moves to dismiss Roeder and Grill's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) authorizes a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). As the Eighth Circuit Court of Appeals has explained,

> We review *de novo* the district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party. *See Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012); *see also* FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012); *accord Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013) (quoting *Richter*, 686 F.3d at 850); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (stating the same standards).

Courts consider "plausibility" under this *Twom-bal* standard[2] by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney*, 700 F.3d at 1128 (quoting *Iqbal*, 556 U.S. at 679). Also, courts must "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). The Eighth Circuit Court of Appeals has refused, at the pleading stage, "to incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and *Twombly*." *Id.* Nevertheless, the question "is not whether [the pleader] might at some later stage be able to prove [facts alleged]; the question is whether [it] has adequately asserted facts (as contrasted with naked legal conclusions) to support [its] claims." *Id.* at 1129. Thus,

> [w]hile this court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party," *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000), "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting [*Bell Atl. Corp. v.] Twombly*, 550 U.S. [544,] 555, 127 S. Ct. 1955 [(2007)]).

*Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012); *Whitney*, 700 F.3d at 1128 (stating the same standards).

With the above standards in mind, I turn to consider DIRECTV's Motion to Dismiss.

---

[2] The "*Twom-bal*" standard is my nickname for the "plausibility" pleading standard established in the United States Supreme Court's twin decisions on pleading requirements, and standards for dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for claims in federal court. *See Twombly*, 550 U.S. at 544; *see also Iqbal*, 556 U.S. at 662.

### B.    The FLSA Generally

The FLSA generally requires employers to pay covered employees engaged in interstate commerce "one and one-half times" their regular rate of pay for all hours worked in excess of forty hours per week. 29 U.S.C. § 207; *see Jarrett v. ERC Properties, Inc.*, 211 F.3d 1078, 1081 (8th Cir. 2000) ("The FLSA requires covered employers to compensate non-exempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours."). If an employer violates this provision, the statute provides for the employee to recover, through a private cause of action, "in the amount of [his] unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The FSLA's "maximum hour" requirement, however, does not protect all employees. Rather, the FSLA contains certain exemptions that exclude various persons from coverage under Section 207. *See id*. at § 213. Where an exemption is alleged, the employer bears the burden of proving that exemption, which is to be narrowly construed against the employer. *See Graham v. Town & Country Disposal of W. Mo., Inc.*, 865 F.Supp.2d 952, 956 (W.D. Mo. 2011).


### C.    Joint Employment Under the FLSA

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); *see Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014); *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 47 (1st Cir. 2013); *Moore v. Appliance Direct, Inc.*, 708 F.3d 1233, 1237 (11th Cir. 2013); *Ellington v. City of East Cleveland,* 689 F.3d 549, 554 (6th Cir. 2012).[3] "'[T]he remedial purposes of the FLSA require the courts to define "employer" more broadly than the term would be interpreted in traditional common law applications.'"

---

[3]An "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). To "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g).

*Orozco*, 757 F.3d at 448 (quoting *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989) (per curiam)); *see Ellington*, 689 F.3d at 554-55 (same); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991) (same); *see also Nationwide Mut. Inc. v. Darden*, 503 U.S. 318, 326 (1992) (noting that the FLSA's definition "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles"); *Boucher v. Shaw*, 572 F.3d 1087, 1090 (9th Cir. 2009) ("We have held that the definition of 'employer' under the FLSA is not limited by the common law concept of 'employer,' but "'"is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes."'") (quoting *Lambert v. Ackerley*, 180 F.3d 997, 1011-12 (9th Cir. 1999) (en banc) (quoting in turn *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983)). "In other words, the employment relationship determination 'is not fixed by labels that parties may attach to their relationship nor by common law categories nor by classifications under other statutes.'" *Ellington*, 689 F.3d at 555 (quoting *Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 528 (1950)); *accord Solis v. Laurelbrook Sanitorium and Sch., Inc.*, 642 F.3d 518, 522 (6th Cir. 2011) (same)).

Federal regulations identify three situations in which a joint employment relationship "generally will be considered to exist":

> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
>
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls,

is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b) (footnotes omitted). As a result of expansive definitions of employer and employee under the FSLA, federal courts rely on an economic reality test in determining whether a party qualifies as an employer or employee under the FLSA. *See Ash v. Anderson Merchandisers, L.L.C.*, --- F.3d ---, 2015 WL 4978701, at *2 (8th Cir. Aug. 21, 2015) (noting that "'the test of employment under the FLSA is one of 'economic reality.'"") (quoting *Tony and Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301 (1985) (quoting in turn *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961)); *see also Keller v. Miri Microsystems L.L.C.,* 781 F.3d 799, 804 (6th Cir. 2015); *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014); *Brown v. New York Dept. of Educ.*, 755 F.3d 154, 167 (2d Cir. 2014); *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 506 (10th Cir. 2012); *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012); *In re Enter. Rent-A-Car Wage & Hour Emp't Practices*. 683 F.3d 462, 468 (3rd Cir. 2012); *Morrison v. International Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001); *Lambert v. Ackerley*, 180 F.3d 997, 1001–02, 2012 (9th Cir. 1999); *Bayside Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998); *Villarreal v. Woodham,* 113 F.3d 202, 205 (11th Cir. 1997).

In applying the economic reality test to determine whether an entity is an employer, federal courts look to who has operating control over the employees, and consider whether the alleged employer: (1) possessed the power to hire and fire employees; (2) supervised or controlled employee work schedules or conditions of employment; (3) determined the rate or method of payment; and (4) maintained employee records.[4] *See*

---

[4]On the related question of whether an individual worker is an employee under the FLSA, federal courts have instructed that the following six factors are to be considered:

*Orozco*, 757 F.3d at 448; *Brown*, 755 F.3d at 167; *Barlow*, 703 F.3d at 506; *In re Enter. Rent-A-Car Wage & Hour Emp't Practices*. 683 F.3d at 468; *Gray*, 673 F.3d at 354–55; *Lamber*, 180 F.3d at 1001–02, 2012; *Herman*, 163 F.3d at 675;*Villarreal,* 113 F.3d at 205; *Henthorn v. Department of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994); *see also Schubert v. Bethesda Health Grp., Inc.*, 319 F. Supp.2d 963, 971 (E.D. Mo. 2004) (citing *Baker v. Stone Cty.*, 41 F. Supp.2d 965, 980 (W.D. Mo. 1999)). None of these factors alone is dispositive; instead, courts look to the totality-of-the-circumstances. *See Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013); *Barlow*, 703 F.3d at 506; *Ellington v. City of E. Cleveland*, 689 F.3d 549, 555 (6th Cir. 2012); *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999); *Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998*); Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058–59 (2d Cir. 1988). I will consider each of these factors in turn, accepting all well pleaded allegations in the Complaint as true, and drawing all reasonable factual inferences

---

(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his or her managerial skill; (3) the alleged employee's investment in equipment and materials required for his or her tasks, or his or her employment of workers; (4) or that his or her service rendered requires a special service skill; (5) the degree of permanency and duration of the working relationship; and (6) the extent to which the service rendered is an integral part of the alleged employer's business. *See Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1313 (11th Cir. 2013); *Barlow*, 703 F.3d at 506; *Hopkins v. Cornerstone Am.,* 545 F.3d 338, 343 (5th Cir. 2008); *Schultz v. Capitol Int'l Sec. Inc.*, 466 F.3d 298, 304–05 (4th Cir. 2006); *Martin v. Selker Bros.*, 949 F.2d 1286 (3d Cir. 1991); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058–59 (2d Cir. 1988); *Secretary of Labor, U.S. Dept. of Labor v. Lauritzen*, 835 F.2d 1529, 1535 (7th Cir. 1987); *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981); *see also Franks v. Oklahoma State Indus.,* 7 F.3d 971, 972 (10th Cir. 1993) (employing an almost identical five factor test). Here, because there is no dispute that Roeder and Grill were employees under the FSLA, it is unnecessary for me to conduct such an analysis.

from those facts in Roeder and Grill's favor. *See Smithrud v. City of St. Paul,* 746 F.3d 391, 395 (8th Cir.2014); *Freitas v. Wells Fargo Home Mortg., Inc.,* 703 F.3d 436, 438 (8th Cir. 2013); *Richter v. Advance Auto Parts, Inc.,* 686 F.3d 847, 850 (8th Cir.2012).

### D. Review Of Factors

#### 1. The power to hire and fire

I examine first whether DIRECTV had the right, directly or indirectly, to hire, fire, or modify the employment conditions of Roeder and Grill. *See Orozco*, 757 F.3d at 448; *Brown*, 755 F.3d at 167; *Barlow*, 703 F.3d at 506; *In re Enter. Rent-A-Car Wage & Hour Emp't Practices*. 683 F.3d at 468; *Gray*, 673 F.3d at 354–55; *Lamber*, 180 F.3d at 1001–02, 2012; *Herman*, 163 F.3d at 675;*Villarreal,* 113 F.3d at 205; *Henthorn*, 29 F.3d at 684. Indirect control as well as direct control can demonstrate a joint employment relationship. *See Torres–Lopez v. May*, 111 F.3d 633, 643 (9th Cir. 1997) (citing 29 C.F.R. § 500.20(h)(4)(ii)).

In their complaint, Roeder and Grill provide factual allegations regarding DIRECTV's direct control over them and indirect control by way of agreements with, and control over, the Provider Network. Complaint at ¶¶ 17–19. However, Roeder and Grill acknowledge that hiring is done "at the Providers' level." Complaint at ¶ 32. Roeder and Grill also describe the relationship between DIRECTV and the HSPs and the provisions contained within the Provider Agreements that specifically allowed DIRECTV to control all aspects of Roeder and Grill's job activities. Complaint at ¶¶ 19–24. Thus, I find that this factor supports Roeder and Grill's assertion that DIRECTV was their employer for purposes of the FLSA.

#### 2. Supervision and control of work schedules and conditions of employment

I next consider whether DIRECTV had supervision and control over Roeder and Grill's work schedules and conditions of employment. *See Orozco*, 757 F.3d at 448;

*Brown*, 755 F.3d at 167; *Barlow*, 703 F.3d at 506; *In re Enter. Rent-A-Car Wage & Hour Emp't Practices*. 683 F.3d at 468; *Gray*, 673 F.3d at 354–55; *Lamber*, 180 F.3d at 1001–02, 2012; *Herman*, 163 F.3d at 675;*Villarreal,* 113 F.3d at 205; *Henthorn*, 29 F.3d at 684.

Roeder and Grill extensively detail DIRECTV's control over their work schedules, which are transmitted through DIRECTV's dispatching systems, and the order of individual jobs they were required to complete. Complaint at ¶¶ 19–21. In addition, Roeder and Grill allege that DIRECTV exerted direct control over other aspects of their work. DIRECTV required Roeder and Grill to wear a uniform with DIRECTV's insignia on it and to purchase them from DIRECTV, provided them with equipment to use in the field, and directed specific training they were required to have completed. Complaint at ¶¶ 19, 38-39. In addition, Roeder and Grill allege that they were required to report to DIRECTV and coordinate with DIRECTV employees after each completed satellite installation job. Complaint at ¶¶ 20-21. Thus, I find that this factor also supports Roeder and Grill's assertion that DIRECTV was their employer for purposes of the FLSA.

### *3.      Determination of rate and method of payment*

I next consider whether DIRECTV determined the rate and method of payment to Roeder and Grill. *See Orozco*, 757 F.3d at 448; *Brown*, 755 F.3d at 167; *Barlow*, 703 F.3d at 506; *In re Enter. Rent-A-Car Wage & Hour Emp't Practices*. 683 F.3d at 468; *Gray*, 673 F.3d at 354–55; *Lamber*, 180 F.3d at 1001–02, 2012; *Herman*, 163 F.3d at 675;*Villarreal,* 113 F.3d at 205; *Henthorn*, 29 F.3d at 684.

Roeder and Grill allege DIRECTV "determined whether Plaintiffs' work merited compensation, including setting the rate of pay to the Providers for Plaintiffs' work." Complaint at ¶ 34. Roeder and Grill further allege that they were paid pursuant to "a piece-rate payment schedule" designated by DIRECTV. Complaint at ¶ 45.

Accordingly, I find that this factor, too, supports Roeder and Grill's assertion that DIRECTV was their employer for purposes of the FLSA.

### 4. *Maintenance of employment records*

I turn next to the fourth factor, maintenance of employment records.[5] *See Orozco*, 757 F.3d at 448; *Brown*, 755 F.3d at 167; *Barlow*, 703 F.3d at 506; *In re Enter. Rent-*

---

[5] The FLSA defines and prescribes the basic records that an employer must maintain:

> (1) Name in full, as used for Social Security recordkeeping purposes, and on the same record, the employee's identifying symbol or number if such is used in place of name on any time, work, or payroll records,
>
> (2) Home address, including zip code,
>
> (3) Date of birth, if under 19,
>
> (4) Sex and occupation in which employed . . . .
>
> (5) Time of day and day of week on which the employee's workweek begins (or for employees employed under section 7(k) of the Act, the starting time and length of each employee's work period). If the employee is part of a workforce or employed in or by an establishment all of whose workers have a workweek beginning at the same time on the same day, a single notation of the time of the day and beginning day of the workweek for the whole workforce or establishment will suffice,
>
> (6)(i) Regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the Act, (ii) explain basis of pay by indicating the monetary amount paid on a per hour, per day, per week, per piece, commission on sales, or other basis, and (iii) the amount and nature of each payment which, pursuant to section 7(e) of the Act, is

*A-Car Wage & Hour Emp't Practices*. 683 F.3d at 468; *Gray*, 673 F.3d at 354–55; *Lamber*, 180 F.3d at 1001–02, 2012; *Herman*, 163 F.3d at 675; *Villarreal,* 113 F.3d at 205; *Henthorn*, 29 F.3d at 684.

The Complaint is entirely silent on the questions of what entity was responsible for maintenance of Roeder and Grill's employment records and where those records were kept. Thus, I find that this factor neither supports nor weighs against Roeder and Grill's assertion that DIRECTV was their employer for purposes of the FLSA.

---

excluded from the "regular rate" (these records may be in the form of vouchers or other payment data),

(7) Hours worked each workday and total hours worked each workweek (for purposes of this section, a "workday" is any fixed period of 24 consecutive hours and a "workweek" is any fixed and regularly recurring period of 7 consecutive workdays),

(8) Total daily or weekly straight-time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation,

(9) Total premium pay for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under paragraph (a)(8) of this section,

(10) Total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments. Also, in individual employee records, the dates, amounts, and nature of the items which make up the total additions and deductions,

(11) Total wages paid each pay period,

(12) Date of payment and the pay period covered by payment.

29 C.F.R. § 516.2.

##### 5. *Totality of the circumstances*

After reviewing the Complaint, accepting all well-pleaded allegations as true, and drawing all reasonable factual inferences from those facts in Roeder and Grill's favor, I conclude that, under the totality of the circumstances, Roeder and Grill have alleged sufficient facts to show that DIRECTV was their employer for purposes of the FLSA. Accordingly, this portion of DIRECTV'S motion to dismiss is denied.

#### E. *Minimum Wage and Overtime Claims*

DIRECTV challenges the sufficiency of Roeder and Grill's claims alleging failure to pay overtime and minimum wages, which are based, in part, on allegations that Roeder and Grill were (1) routinely subjected to a wage rate that was less than the applicable minimum wage because they were not compensated for all hours worked; (2) unlawfully deprived of overtime compensation; (3) not reimbursed by DIRECTV for necessary business expenses; and (4) subject to "charge backs" from their pay. Complaint at ¶ 44-55.

DIRECTV argues that Roeder and Grill have failed to plead a plausible claim because they have not alleged: (1) the number of hours worked for which they did not receive compensation; (2) the specific weeks during which those hours were worked; (3) their rate of pay; (4) the business expenses for which they did not receive reimbursement; and (5) the amount of "charge backs" deducted from their pay. DIRECTV relies on the standards for pleading overtime and wage claims under the FLSA set forth by the Ninth Circuit Court of Appeals in *Landers v. Quality Communications, Inc.*, 771 F.3d 638 (9th Cir. 2014). The *Landers* decision, however, does not require a detailed account of overtime hours worked or weeks during which overtime was not paid. Instead, the court held that a plaintiff "may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was

paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility." *Landers*, 771 F.3d at 645. The Ninth Circuit Court of Appeals did require that a plaintiff must recite more than conclusory allegations that follow the statutory language in order to survive a Rule 12(b)(6) motion. *Id*. at 644.

DIRECTV specifically points to language in *Landers* that, "at a minimum, a plaintiff asserting a violation of the FLSA overtime provisions must allege that she worked more than forty hours in a given workweek without being compensated for the hours worked in excess of forty during that week." *Id*. at 645. While the Ninth Circuit Court of Appeals did not require plaintiffs to plead the overtime compensation allegedly owed to them "with mathematical precision," it instructed that "they should be able to specify at least one workweek in which they worked in excess of forty hours and were not paid overtime wages." *Id*. at 646. DIRECTV argues that Roeder and Grill's failure to pinpoint a specific workweek in their factual allegations supporting the FLSA minimum wage and overtime claims cause those claims to fail to meet *Landers's* pleading requirements.

Roeder and Grill allege that they "routinely worked more than 40 hours per week," and that DIRECTV's policies and practices "resulted in [Plaintiffs] being routinely subjected to working at an effective wage rate of less than the applicable minimum wage." Complaint at ¶¶ 60, 62, 64, 66. The *Landers* decision clearly holds that a plaintiff fails to state a claim under the FLSA by alleging only that he or she worked "more than 40 hours per week." *Landers*, 771 F.3d at 645. Roeder and Grill do not identify a date-specific workweek during which they worked in excess of 40 hours, and DIRECTV argues that, as a result, Roeder and Grill's pleadings falls short of the standard articulated in *Landers*.

*Landers* does not govern in this case, because it is not controlling precedent within the Eighth Circuit. *See Rural Water Sys. No. 1 v. City of Sioux City,* 967 F. Supp. 1483,

1498 n.2 (N.D. Iowa 1997). The Ninth Circuit Court of Appeals's reasoning is persuasive, but not controlling in the Eighth Circuit. *See Id.* Moreover, even if the Eighth Circuit Court of Appeals were to adopt *Landers's* pleading requirements, it would not impact this case. In *Landers*, plaintiff only made a general allegation that he was subjected to a piecework wage system in which he worked more than forty hours per week without being paid for overtime and that if he was paid some overtime, it was less than the law required. *See Landers*, 771 F.3d at 640. There was no allegation identifying any particular week when the plaintiff had worked more than forty hours. Thus, the defendant was left to guess at what time periods were covered by the plaintiff's allegations. Roeder and Grill do not assert the same or a similar type of unpaid-overtime case as the plaintiff in *Landers*. Roeder and Grill allege that they were misclassified as exempt from the requirement to pay time-and-one-half for overtime. Roeder and Grill allege that they always worked more than forty hours per week. Thus, unlike the defendant in *Landers*, DIRECTV is not left to guess when Roeder and Grill contend they was underpaid: they allege that they were underpaid for every week they worked for DIRECTV.

Considering the facts in the light most favorable to Roeder and Grill, I find that the *Landers* standard is satisfied by Roeder and Grill's allegations concerning their overtime and minimum wage claims brought under the FLSA. Thus, DIRECTV's Motion to Dismiss Roeder and Grill's overtime and minimum wage claims for failure to allege sufficient facts are denied.

### III. CONCLUSION

Ultimately, Roeder and Grill may have to provide more information regarding the secondary provider which employed them, and prove that they were not paid for overtime and were subject to a rate below minimum wage but, at this motion to dismiss stage, in

which I must accept all well pleaded allegations in the Complaint as true and draw all reasonable factual inferences from those facts in Roeder and Grill's favor, they have pleaded sufficient facts to show that DIRECTV was their employer for purposes of the FLSA. Therefore, for the reasons stated above, defendant DIRECTV's Motion to Dismiss is denied in its entirety. Plaintiff Roeder and Grill's Conditional Motion For Time Within Which To Seek Leave To Amend Should The Court Grant Defendants' Rule 12(b)(6) Motion to Dismiss is accordingly denied as moot.

**IT IS SO ORDERED**.

**DATED** this 22nd day of September, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA